AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
MAY 3 1 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No.
A gold BLU Grand M2 phone S/N 10600210180947 )
IMEI 3S4216091803225 ) 19MJ9623
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 and 963 | Importation of controlled substances and conspiracy to do the same |

The application is based on these facts:
See Affidavit of HSI Special Agent Gustavo Carrillo, which is hereby incorporated by reference and made part hereof.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*
Special Agent Gustavo Carrillo, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: May 31, 2019

*Judge's signature*

City and state: San Diego, CA          Hon. Andrew G. Schopler, Magistrate Judge
                                        *Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> A gold BLU Grand M2 phone
> S/N 1060021018094770
> IMEI 3S4216091803225
> (the "Target Device")

The Target Device is currently in an evidence vault located at 2051 North Waterman Avenue, Ste. 100, El Centro, CA 92243.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 1, 2017, up to and including February 28, 2019:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substances, from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances, from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of 21 U.S.C. §§ 952, 960, 963.



## AFFIDAVIT

I, Special Agent Gustavo Carrillo of Homeland Security Investigations (HSI), being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device (the "Target Device"):

> A gold BLU Grand M2 phone
> S/N 1060021018094770
> IMEI 3S4216091803225
> (the "Target Device")

as described in Attachment A, and seize evidence of crimes, specifically violations of Title 21, United States Code, Section(s) 952, 960, and 963. This search supports an investigation and prosecution of Ramona Munguia ("Defendant") for the crimes mentioned above.

2. The Target Device was seized from Defendant on February 28, 2019, at the time of her arrest at the Calexico, California West Port of Entry. Defendant has been charged with the importation of 10.16 kilograms (22.40 pounds) of methamphetamine in the Southern District of California (Case No. 19-cr-1075-WQH). The Target Device is currently in an evidence vault located at 2051 N. Waterman Ave, El Centro, CA 92243.

3. Based on the information below, there is probable cause to believe that a search of the Target Device will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience, training, and consultation with other law enforcement agents. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all of the information known by me or other federal agents regarding this investigation.

5. Based upon my training, experience, and all the facts and opinions set forth in this Affidavit, I believe the following items will be found in the Target Device:

1

     a.    Telephone numbers or identities assigned to the device, including usernames and passwords and electronic mail addresses;
     b.    Call history information, including Internet Protocol addresses accessed by the device or accessing the device;
     c.    Stored photographs, videos and text messages;
     d.    Stored electronic mail, including attachments, and voice messages and other recordings;
     e.    Web-browsing history and any stored web pages;
     f.    Stored documents and other files;
     g.    Stored geo-location information; and,
     h.    Data stored in any application.

These items may be or may lead to evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 952, 960, and 963.

## EXPERIENCE AND TRAINING

6. I have been employed as an HSI Special Agent since July 2016. During my tenure with HSI, I have participated in several narcotics-related investigations and have learned how controlled substances are manufactured, consumed, packaged, and distributed. I have also become familiar with the methods of operation, language, and patterns of drug trafficking organizations.

7. Prior to becoming a Special Agent, I was employed as a uniformed police officer with the Federal Protective Service. In that capacity, I conducted preliminary investigations regarding various violations of Title 18 of the United States Code. I also served as an instructor for federal law enforcement officers on various subjects, including basic law enforcement procedures, emergency management, and security-related subjects.

8. I hold a Bachelor of Arts Degree in Social Behavioral Science with an Emphasis in Criminology from the University of Utah, and I served as part of an infantry rifle platoon in the United States Marine Corps, attaining the rank of Sergeant and Squad Leader.

9. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular

phones to maintain communications with co-conspirators. Individuals involved in the smuggling and trafficking of narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence, such as voicemails and text messages. For example, load drivers smuggling controlled substances across the United States/Mexico border are often in telephonic contact with co-conspirators immediately prior to or after crossing a load vehicle in order to receive instructions on where and when to deliver the narcotics.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b. Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug traffickers will use cellular/mobile telephones to direct persons to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with persons who transport their narcotics and/or drug proceeds.

11. Additionally, based upon my training and experience, I know that cellular phones can and often do contain electronic evidence, such as emails, text messages, chat logs, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular phone. Specifically, searches of cellular phones often yield evidence:

   a. tending to indicate efforts to import methamphetamine, or some other federally controlled substances, from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances, from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances, from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances, from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

12. On February 28, 2019, at approximately 2:26 a.m., Ramona Munguia ("Defendant"), applied for entry into the United States from Mexico at the Calexico West Port of Entry. Defendant was the driver and sole occupant of a 2003 Ford F-150. Defendant was referred for further inspection, and her car was scanned by a Z-portal x-ray machine. Customs and Border Protection (CBP) Officers observed anomalies in Defendant's car,

4

searched it, and discovered 18 packages hidden in the firewall of the vehicle. The packages had a combined weight of 10.16 kilograms and their contents field-tested positive for methamphetamine.

13. Defendant was subsequently arrested, and the Target Device was seized from Defendant's purse at the time of her arrest. Defendant was read her *Miranda* rights, and agreed to speak to agents without an attorney present. Defendant claimed that the drugs were not hers and indicated that the drugs might be her husband's because her husband had a drug problem in the past. Defendant was arrested on January 26, 2017, in a similar incident at the Border Patrol checkpoint along Route 86. In that incident, Defendant was driving another vehicle in which approximately 26.127 kilograms of methamphetamine was discovered. Unlike the current case, Defendant was traveling with her son on that occasion and he later agreed to take full responsibility for the incident. Defendant's son was sentenced to 41 months (*see* Case No. 17-cr-472-H (S.D. Cal.)), and the charges against Defendant were dismissed. Defendant's son is still serving that sentence.

14. Particularly in light of Defendant's involvement in two drug smuggling events within a limited time period, there is probable cause to believe that Defendant's phone may contain evidence of Defendant's drug trafficking activities. Further, I am aware that drug trafficking conspiracies often require substantial work and planning to successfully evade detection by law enforcement. In my training and experience, this may mean planning and coordination in the days and weeks prior to a smuggling event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of the narcotics. Based on my training and experience, individuals such as Defendant will also attempt to minimize the amount of time they were involved in smuggling activities and often are actually involved for weeks and months longer than they will admit. Given those facts, I respectfully request permission to search the Target Device for data beginning on January 1, 2017, up to and including February 28, 2019.

*[handwritten]:* BASED ON MY TRAINING AND EXPERIENCE, I BELIEVE DEFENDANT HAS BEEN INVOLVED IN DRUG TRAFFICKING FROM AT LEAST JANUARY 2017 TO FEBRUARY 2019.

5

## METHODOLOGY

15. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the

identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

18. Based on all of the facts and circumstances described above, there is probable cause to conclude that Defendant used the Target Device to facilitate violations of Title 21, United States Code, Section(s) 952, 960, and 963.

19. Because the Target Device was promptly seized during the investigation of Defendant's trafficking activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by Defendant continues to exist on the Target Device. As stated above, I believe that the date range for this search is from January 1, 2017, up to and including February 28, 2019.

20. For the above reasons, I request that the Court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Gustavo Carrillo
Homeland Security Investigations

Subscribed and sworn to before me this 31st day of May, 2019.

Hon. Andrew G. Schopler
United States Magistrate Judge

7